UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HARDY,

    *Plaintiff*,

v.

DIANA MARBLE, *et al.,*

    *Defendants*.

_____/

CASE NO. 11-CV-13008

DISTRICT JUDGE PATRICK J. DUGGAN
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS PETTY, LYNCH AND ORTH'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 11)
**AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 17)

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**.

## II.  REPORT

### A.  Introduction

Plaintiff David Hardy, a state prisoner currently housed at the Kinross Correctional Facility in Kincheloe, Michigan, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983, alleging that his Eighth Amendment right to not have his medical needs treated with deliberate indifference was violated by four nurses and one nurse practitioner at the Mid-Michigan Correctional Facility in St. Louis, Michigan.[1] (Compl., Doc. 1.) On July 20, 2011, Plaintiff's

---

[1] The facility has since been renamed the Central Michigan Correctional Facility.

motion to proceed without prepayment of fees and costs was granted by U.S. Magistrate Judge R. Steven Whalen, who also directed that the U.S. Marshal serve the complaint on all defendants. (Docs. 6, 7.) On September 16, 2011, U.S. District Judge Patrick J. Duggan entered an order referring pretrial matters to the undersigned magistrate judge. (Doc. 13.)

Defendants Lynch, Orth and Petty (hereafter "Defendants") filed a on September 16, 2011 (Doc. 11), asserting that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies with regard to all claims brought against them. Plaintiff filed a response and "counter-motion" for summary judgment on October 5, 2011. (Doc. 17.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

### B. Plaintiff's Allegations Against Defendants Petty, Lynch and Orth

Plaintiff alleges that the first nine nights he spent at the Mid-Michigan Correctional Facility ("STF") after he was transferred there in March 2010 he was forced to sleep on a top bunk even though he "informed the intake officer" that he had a bottom bunk detail at his previous facility. (Compl., Doc. 1 at 21.[2]) Plaintiff alleges that Defendant Nurses Petty and Lynch were responsible for the initial denial. (*Id*. at 23.)

Plaintiff claims that in late March 2010, he was seen in healthcare for a cough three times by Defendant Nurses Petty and Lynch and Defendant Nurse Practitioner Marble, and they found nothing wrong. On April 8, 2010, he was taken to the hospital where he was diagnosed with a collapsed lung. (*Id*. at 24-26.)

---

[2]When referring to this document, all page references are to the page numbers assigned by the Court's electronic filing system.

2

With regard to Defendant Nurse Orth, Plaintiff claims that on June 9, 2010, following an examination at the Gratiot Medical Center for what Plaintiff suspects was a pinched nerve in his neck, he was sent back to the facility with no treatment after the doctor who examined him called STF and was told by Defendant Orth that there was nothing wrong with him. (*Id*. at 33.)

### C. Summary Judgment Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary

judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

    **D.**    **Analysis and Conclusions**

Defendants assert that they are entitled to summary judgment because Plaintiff failed to satisfy the exhaustion rule, which is a precondition to filing suit. Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983,

152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible

or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R).[3]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

In the instant case, Defendants have provided documentation to show that, while incarcerated at STF, Plaintiff filed three Step III grievances. (Doc. 11 at Ex. B.) Two of the grievances clearly have no relevance to this case; one concerns the denial of Tylenol or Motrin on June 17, 2010 (Grievance No. STF-10-06-0675-12E4, Doc. 11 at Ex. C), and the other asserts that Plaintiff's right to possess legal property in his cell was violated (Grievance No. STF-10-05-0498-07b, Doc. 11 at Ex. E).

---

[3]The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly requires this higher level of specificity.

In the third grievance, Plaintiff alleged that his medical care leading up to his hospitalization for a collapsed lung on April 8, 2010, was inadequate. (Grievance No. STF-10-04-0415-12E3, Doc. 11 at Ex. D.) In the grievance, Plaintiff mentions Defendants Lynch and Petty, claiming that they had him wait in the hall for 3 hours and then told him to leave and not come back unless he was having a "heart attack or near death . . . " and that twice they told him that his chest pain was nothing serious. (Ex. D at 5.)

The grievance was considered and denied and Plaintiff submitted a Step II appeal. The Step II appeal response was returned to Plaintiff on May 26, 2010. (Ex. D at 3.) Plaintiff's Step III appeal, however, was not considered because it was rejected as untimely. (Ex. D at 2.) The deadline for filing his Step III appeal was June 10, 2010, but the appeal was not received until August 4, 2010. (*Id.*)

Defendants move for summary judgment on the grounds that Plaintiff failed to properly exhaust his claims because he did not complete the grievance process through all three steps in a timely fashion. Plaintiff has responded with a quote that is purportedly from *Woodford, supra*, stating that ". . . habeas corpus law permits petitioners to overcome procedural defaults . . . as well as (both) the U.S. Supreme Court and the Court of Appeals Circuits all have exceptions when a petition is filed untimely." (Resp., Doc. 17 at 2.) This "quote," however, has been totally removed from its original context, which has destroyed its meaning. The *Woodford* court expressly rejected the notion "that the PLRA provision was meant to incorporate the narrow technical definition of exhaustion that applies in habeas." *Woodford*, 548 U.S. at 101. Plaintiff also claims that the MDOC used "abstruse and deceitful" language in crafting their grievance policy, making the policy unenforceable and entitling him to equitable estoppel. (Doc. 17 at 6, 8-9.)

7

As recently as 2011, the Sixth Circuit has confirmed that proper exhaustion in compliance with the rules of the MDOC's grievance policy is a prerequisite to filing suit:

> The PLRA's exhaustion requirement, contained in 42 U.S.C. § 1997e(a), requires "proper" exhaustion, which includes compliance with a state agency's timeliness deadlines. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *see also id.* at 93, 126 S. Ct. 2378 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion.").

*Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). In this case, Plaintiff's Step III appeal was received almost two months past the deadline imposed by the grievance policy, and because of this failure to adhere to the policy's time requirement, the appeal was rejected without being considered on its merits. I suggest that this is precisely the situation where *Woodford* and *Siggers* apply, and therefore suggest that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise

others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                         s/ *Charles E. Binder*
                                         CHARLES E. BINDER
Dated: February 3, 2012               United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Allan Soros, served by first class mail on David Hardy, #15925, Kinross Correctional Facility, 16770 S. Watertower Dr., Kincheloe, MI, 49788-1637; and served on District Judge Duggan in the traditional manner.

Date: February 3, 2012            By     s/*Jean L. Broucek*
                                        Case Manager to Magistrate Judge Binder